UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROLAND PIER,

        Plaintiff,

v.                                                     CASE No. 8:13-CV-1052-T-33TGW

ADVANCE/NEWHOUSE
PARTNERSHIP,

        Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff, Roland Pier, sues the defendant, Advance/ Newhouse Partnership ("ANP"), his former employer, asserting that the defendant interfered with his rights under the Family and Medical Leave Act ("FMLA") and terminated his employment in retaliation for exercising those rights.[1]  The defendant filed a Motion for Summary Judgment (Doc. 18) arguing, among other things, that it did not violate the plaintiff's rights under

_____

[1] The lawsuit initially identified Bright House Networks, LLC, as the defendant. However, the plaintiff was employed by ANP.  Accordingly, ANP was substituted as the defendant in this action (Docs. 3, 5).

the FMLA, and that there is no causal connection between the plaintiff's exercise of his FMLA rights and the termination of his employment.

The plaintiff's brief and conclusory opposition memorandum and affidavit (Docs. 19, 24) fail to establish the existence of a genuine dispute of material fact as to the plaintiff's FMLA claims. Accordingly, I recommend that the Defendant's Dispositive Motion for Summary Judgment (Doc. 18) be granted.

## I.

The plaintiff was employed by the defendant from August 2005 until his discharge in December 2012 (Doc. 18-2, ¶6). The defendant provides management and support services to "Bright House Networks," which provides cable television, telephone and hi-speed internet services in West Central Florida (id., ¶2).

The plaintiff was an Outbound Sales Representative in the Outbound Telesales Department, which is responsible for telemarketing and selling "Bright House" services and products (id., ¶¶5, 6). The plaintiff's duties included calling customers to sell those products and services, for which he was paid an hourly wage and commissions on certain sales (id., ¶6).

During the relevant time period, Sherri Michelson was the plaintiff's Sales Supervisor (Doc. 18-3, ¶¶3, 8).  Michelson, and other supervisors and managers, reported to Taylor Meringolo, the Director of Marketing & Sales (id., ¶¶1, 3).

The plaintiff's personnel file reflects that, during his tenure with the defendant, the plaintiff was counseled about various problems with his job performance, including spending an inordinate amount of his workday idle or away from his workstation, and not spending a sufficient amount of time on the telephone contacting customers (Doc. 18-2, ¶7; see Doc. 18-3, pp. 8-16).[2]

In April 2011, the plaintiff requested, upon the suggestion of his then-supervisor, William Simoneau, to take intermittent FMLA leave to care for his ill mother (Doc. 18-1, pp. 7-9).  The defendant provides eligible employees with unpaid family and medical leave pursuant to the FMLA, and the defendant promptly granted the plaintiff's request (id., p. 10; Doc. 18-2, ¶¶3, 8, 10).  The plaintiff subsequently applied for, and was granted, FMLA

---

[2]Page references correspond to the numbers assigned by CM/ECF.

leave in October 2011, April 2012, and October 2012 (Doc. 18-1, pp. 10-11; Doc. 18-2, ¶9).[3]

The plaintiff frequently used his approved FMLA leave allotment (Doc. 18-4, ¶7). Thus, at the time of his discharge, he had used all but 12 hours of his available FMLA leave (Doc. 18-2, ¶¶10, 13). Furthermore, the plaintiff was permitted to take FMLA time at his discretion; usually, the plaintiff took his FMLA leave a few hours at a time by arriving at work late or leaving early (id., ¶10; see Doc. 18-1, p. 13; Doc. 18-4, ¶7). The defendant never denied the plaintiff's requests to take FMLA leave, and the plaintiff always returned to his same job after taking FMLA leave. The plaintiff's FMLA absences did not, however, substantially affect the workplace because they were typically of very short duration and, therefore, they had less operational impact than an employee's vacation (Doc. 18-4, ¶7).

The Outbound Telesales Department has "specific requirements for the sales representatives for making and entering sales in order to ensure compliance with applicable telemarketing laws and company policies, and to

---

[3]The record indicates that an approval for intermittent FMLA leave was valid for a six-month period and, at the end of each six-month period, the plaintiff completed new paperwork for an extension of his FMLA leave (Doc. 18-1, p. 10).

ensure that they are properly paid commissions" (Doc. 18-4, ¶4). Michelson, the plaintiff's supervisor, alleges that on May 12, 2012, she discussed those sales guidelines with her sales representatives (including the plaintiff) and distributed written copies of the sales guidelines (id.; see id., pp. 4-6). The plaintiff, however, does not recall that meeting and avers that the sales guidelines, "if they did exist[,] ... were not published to me" (Doc. 18-1, p. 19; Doc. 19, ¶6).

As pertinent here, the defendant's policy prohibits sales representatives from "entering sales in stages" (Doc. 18-3, ¶5; Doc. 18-4, p. 5). "Staging" is "a scheme whereby a sales representative enters a single customer upgrade in service as multiple sales ... which result[s] in ... unearned commissions and inaccurately inflate[d] sales figures" (Doc. 18-3, ¶5). For example (id.):

> [I]f a sales representative is able to sell an upgrade from Bright House RoadRunner 10 [internet service] to RoadRunner 40 (and not merely to the intermediate RoadRunner 20), he would improperly "stage" the sale by recording (1) one sale of an upgrade from RoadRunner 10 (called "Standard" speed) to RoadRunner 20 (called "Turbo") followed by (2) a second sale of an upgrade from RoadRunner 20 to RoadRunner 40

(called "Lightning"). By entering a sale in stages, the employee would receive—improperly—commissions for two "sales" when, in fact, he had made only a single sale (the upgrade from "Standard" to "Lightning").

In November 2012, the defendant conducted a routine audit of the Outbound Telesales Department to ensure that the sales policies and guidelines were being followed (Doc. 18-3, ¶¶7, 10). The audit indicated policy violations by the plaintiff and, consequently, an investigation was conducted which examined the plaintiff's sales for an entire year (id.).

The investigation revealed that, during the period from November 2011 to November 2012, the plaintiff violated sales guidelines on 29 occasions by "entering orders in stages" (i.e., upgrading a customer from RoadRunner 10 to RoadRunner 40 as two separate sales) (id., ¶10; Doc. 18-4, ¶8; see, e.g., Doc. 18-3, pp. 17-27).

On November 29, 2012, supervisor Michelson and Jody Dillon, a manager, discussed with the plaintiff the results of the investigation (Doc. 18-4, ¶9; see Doc. 18-1, p. 15). At that meeting, the plaintiff allegedly acknowledged that the procedure he used to enter those 29 sales was "not acceptable" (Doc. 18-3, p. 16; see also Doc. 18-4, ¶9). Further, the plaintiff

-6-

recounted for Michelson and Dillon the correct process for entering sales, and told them that he deviated from the normal procedure to placate customers (Doc. 18-4, ¶9; see also Doc. 18-1, pp. 14-15).  Specifically, the plaintiff stated that those customers were unhappy with their internet speed, so he upgraded them immediately to RoadRunner 20, which could be done on the computer system, in order to give them a faster internet connection until the router for the RoadRunner 40 service could be installed (Doc. 18-1, pp. 14-15; Doc. 18-3, ¶11; Doc. 18-4, ¶9).[4] The plaintiff stated that he did not seek a supervisor's approval for those transactions because he did not think it was necessary, and asserted that "there was never a prohibition against multiple upgrades for any customer" (Doc. 18-1, p. 16).  Further, the plaintiff avers that entering sales in stages "was never prohibited, either verbally or in writing.... It was never expressed as something one should not do" (id., p. 15).

Meringolo, the Director of Marketing & Sales, was not present at the meeting, but the substance of that meeting was passed on to her,

---

[4]Michelson documented a summary of their conversation in the "tracking log" of the plaintiff's performance and discipline (see Doc. 18-3, pp. 15-16).

including that the plaintiff admitted to entering the sales orders incorrectly, and his excuse for doing so (Doc. 18-3, ¶11). Meringolo stated that she considered the plaintiff's reason for improperly entering the sales in stages, but she did not find it credible or justified because the plaintiff engaged in the misconduct 29 times (id., ¶12). Furthermore, Meringolo reasoned that the other sales representatives who work with equally irate customers did not find it necessary to violate company policy in that matter, and noted that there were other acceptable methods to remedy customer issues, such as expedited installation or account credits (id.).

Moreover, Meringolo stated that, if a sales representative has a customer with service concerns, he must contact a supervisor for assistance and note in the record the action taken (id., ¶6). Therefore, it did not make sense to Meringolo that, if the plaintiff did not believe he was doing anything wrong, why he did not tell his supervisor or note in the customer's accounts the extenuating circumstances for entering the sales in stages (id., ¶12).

In December 2012, Meringolo decided, with the concurrence of the human resources director, to terminate the plaintiff's employment (id., ¶13). Meringolo explained that, based on the results of the investigation, she

believed that the plaintiff violated the defendant's sales guidelines and policy by entering sales in stages on 29 occasions (id.). Meringolo stated that the plaintiff's discharge was consistent with the defendant's prior practices for addressing violations of critical sales policies and employee dishonesty (id.). Thus, she asserts that the department has "zero tolerance" for employees manipulating accounts to gain unearned commissions, as well as theft, and other unethical behavior (id.; Doc. 18-2, ¶11). Meringolo and Eric H. Kemerer, the defendant's Senior Director of Human Resources, added that they are unaware of any instance where a sales representative who committed an integrity violation was not terminated (Doc. 18-2, ¶¶1, 5; Doc. 18-3, ¶7; see, e.g., Doc. 18-3, pp. 6-7). Meringolo also averred that the plaintiff's requests for FMLA leave and his ongoing use of FMLA leave were neither discussed nor considered in deciding that the plaintiff should be discharged (Doc. 18-3, ¶14).

On December 21, 2012, the plaintiff's employment was terminated (Doc. 18-4, ¶10). The plaintiff states that he did not know who made the decision to terminate his employment, or how that decision was made (Doc. 18-1, p. 17). However, the plaintiff avers that, "almost

immediately" before his termination, he had requested "an accounting of [his] remaining FMLA time" and the defendant refused to give him an accounting despite his repeated requests (Doc. 19, ¶4).

In March 2013, the plaintiff filed this lawsuit in state court alleging that the defendant violated the FMLA, 29 U.S.C. 2601 et seq. (Doc. 2). The plaintiff alleges that the defendant interfered with his rights under the FMLA, and terminated his employment in retaliation for exercising his FMLA rights (id., ¶23). The plaintiff seeks back pay, front pay, reinstatement, liquidated damages, and his attorney's fee (id., ¶24). The defendant removed the lawsuit to this court (Doc. 1) and filed an answer, denying the plaintiff's allegations that it violated the FMLA (Doc. 6).

The defendant has filed a motion for summary judgment, arguing that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law on the plaintiff's FMLA claims (Doc. 18). Specifically, the defendant argues that the plaintiff cannot establish that it interfered with the plaintiff's FMLA rights because it never denied the plaintiff's requests for FMLA leave (id., pp. 14-16). Further, the defendant argues that the plaintiff cannot show that it retaliated against him for taking

FMLA leave because it terminated the plaintiff's employment for a legitimate reason unrelated to the exercise of his FMLA rights (id., pp. 16-18).

The plaintiff filed a six-page memorandum in opposition to the defendant's motion, alleging in conclusory terms that the defendant's alleged refusal to provide him with an accounting of his remaining FMLA leave time constitutes interference with his FMLA rights, and that the defendant's proffered reason for his termination was a pretext for FMLA retaliation (Doc. 24). The motion for summary judgment was referred to me for a report and recommendation (Doc. 25). The defendant, with leave of court, filed a reply memorandum (Doc. 27). Oral argument was subsequently heard on the motion (Doc. 28).

## II.

The court shall enter summary judgment if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." F.R.Civ.P. 56(a). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a

-11-

reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc.,

929 F.2d 604, 608 (11th Cir. 1991).[5] If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. <u>United States</u> v. <u>Four Parcels of Real Property</u>, <u>supra</u>, 941 F.2d at 1438.

Where the party moving for summary judgment has the burden of proof at trial on an issue, it must affirmatively show the absence of a genuine dispute of material fact on the issue by presenting credible evidence that would entitle it to a directed verdict if the evidence was not controverted at trial. <u>Id</u>. If the movant makes this showing, then it is entitled to summary judgment unless the nonmoving party comes forward with "significant probative evidence demonstrating the existence of a triable issue of fact." <u>Id</u>. at 1438.

---

[5]The plaintiff argues that the defendant intentionally withheld specific pages of deposition testimony to mislead the court as to the merits of the case (Doc. 24, p. 2 & n. 2). Such a comment is not only unprofessional, but it is baseless because it is the plaintiff's burden to present evidence showing that genuine disputes of material fact remain for trial. Notably, the plaintiff does not state the substance of the alleged favorable testimony that was purportedly withheld, or explain why he did not place that evidence in the record himself.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

### III.

The FMLA allows eligible employees to take job-protected, unpaid leave for up to a total of 12 workweeks in any 12 months to care for a family member with a serious health condition. 29 U.S.C. 2612(a)(1)(C); 29 C.F.R. 825.100(a). The FMLA creates two types of claims to enforce these rights: (1) interference claims, which render employers liable for interfering with, restraining, or denying "the exercise of or the attempt to exercise" any right guaranteed under the FMLA, and (2) retaliation claims, which prohibit an employer from discriminating against an employee because he engaged in activity protected by the FMLA. 29 U.S.C. 2615(a)(1); Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir.

2006). The plaintiff's complaint alleges both types of claims against the defendant.

A.  Interference

"To prove FMLA interference, an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA." Spakes v. Broward County Sheriff's Office, 631 F.3d 1307, 1309 (11ᵗʰ Cir. 2011); Strickland v. Water Works & Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206-07 (11ᵗʰ Cir. 2001).  This type of claim typically alleges interference with the right to take FMLA leave.  See Smith v. BellSouth Telecommunications, Inc., 273 F.3d 1303, 1306 (11ᵗʰ Cir. 2001) ("FMLA prohibits an employer from interfering with an employee's attempt to exercise his leave right"); Lee v. United States Steel Corp., 450 Fed.Appx. 834, 837 (11ᵗʰ Cir. 2012); Eleventh Circuit Pattern Jury Instructions (2013), Family and Medical Leave Act–Interference Claims, §4.16, p. 264.

The defendant argues that it is entitled to judgment as a matter of law on the plaintiff's interference claim because there is no evidence that it interfered with, or denied the plaintiff, any FMLA leave (Doc. 18, pp. 14-16).  Thus, it is undisputed that, each time the plaintiff applied for FMLA

leave, the defendant granted that request, and that the plaintiff was permitted to use his allotment of FMLA leave time at his discretion (Doc. 18-1, pp. 10, 11, 13; Doc. 18-4, ¶7).

Furthermore, the defendant argues that it did not discourage the plaintiff from using FMLA leave (Doc. 18, pp. 14-15). To the contrary, the defendant asserts that it facilitated the plaintiff's use of FMLA leave, as it initially suggested that the plaintiff apply for FMLA leave, it reminded the plaintiff when an FMLA leave period was about to expire, and promptly granted each of the plaintiff's requests for additional FMLA leave (see Doc. 18-1, pp. 7, 9, 12-13; Doc. 18-2, ¶10). Furthermore, the plaintiff was never written up for taking FMLA leave, and the defendant always returned the plaintiff to his same job with the same pay following his FMLA leave (Doc. 18-1, p. 18; Doc. 18-2, ¶10).

Importantly, the plaintiff has not identified one instance when he did not take FMLA leave because the defendant allegedly discouraged him from doing so. Notably, at the time of his discharge, the plaintiff had used all but 12 hours of his allotted FMLA time (Doc. 18-2, ¶13).

The plaintiff argues that the defendant interfered with his FMLA rights by allegedly "refus[ing] to provide me with an accounting of my remaining FMLA time" (Doc. 19, ¶4). The plaintiff does not identify from whom he requested such an accounting, nor does he specify when he made those requests. Rather, the plaintiff asserts vaguely that, when he requested an accounting of his FMLA time, he "was shuffled from one supervisor to the next and [he] never received an accounting" (id.; see Doc. 24, p. 3).

The plaintiff, however, has not identified any provision of the FMLA that imposed upon the defendant an obligation to provide that information. Importantly, "the statute does not protect an attempt to exercise a right that is not provided by FMLA." See Walker v. Elmore County Bd. of Educ., 379 F.3d 1249, 1253 (11th Cir. 2004).

In support of this argument, the plaintiff merely cites to 29 C.F.R. 825.500 (Doc. 24, pp. 3, 4). That regulation, which is titled "Recordkeeping requirements," simply identifies the employee records that employers must maintain pursuant to the FMLA. 29 C.F.R. 825.500(a). Thus, it does not identify any obligation the employer has to the employee, and

-17-

certainly does not obligate an employer to give an employee an accounting of remaining FMLA leave.

It is noted that §825.500(c)(4) references an employer's obligation to maintain copies of FMLA notices given to employees pursuant to 29 C.F.R. 825.300(b)-( c). Section 825.300, in turn, contains a provision that employees taking intermittent FMLA leave may periodically request "notice of the amount of leave counted against the employee's FMLA leave entitlement ... but no more often than once in a 30-day period and only if leave was taken in that period." 29 C.F.R. 825.300(d)(6). The plaintiff, however, has not alleged, nor presented any evidence, that this provision applies to him. In fact, the plaintiff has not even cited that provision.

Moreover, according to the Tenth Circuit Court of Appeals, §825.300(d)(6) merely requires employers to state how much of the requested leave "will be counted against the employee's FMLA leave entitlement," and it does not contain a requirement that an employer give an employee "specific notice of the amount of FMLA leave remaining available to him." Glover v. DCP Midstream GP, LLC, 2013 WL 2631520 at *2 n. 1 (10th Cir.).

In short, the plaintiff has not cited any authority establishing that an employer has an obligation under the FMLA to give an employee an accounting of the FMLA leave he has remaining, and no such authority has been found.   Therefore, even assuming that the defendant denied the plaintiff's request for an accounting of his remaining FMLA leave time, the plaintiff has failed to state a claim for interference because he has not shown that the defendant denied him a benefit to which he was entitled under the FMLA. See Spakes v. Broward County Sheriff's Office, supra, 631 F.3d at 1309.

Moreover, the plaintiff's interference claim also fails because he has not presented any evidence of damages caused by the alleged denial of his request for an accounting.   It is well-established that employees claiming interference with FMLA rights must establish that the employer's violation caused them harm. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002).

In Ragsdale, the Supreme Court held invalid an FMLA regulation which imposed a penalty on employers who failed to advise that leave taken by employees would count against their FMLA entitlement

because it "transformed the company's failure to give notice ... into an actionable violation of §2615 ... absent a showing of consequential harm." Id. at 91. Thus, the Supreme Court emphasized that such a regulation was incompatible with the FMLA's remedial mechanism, which affords no relief absent prejudice from a statutory violation. Id. at 90-91.

Accordingly, the Eleventh Circuit has held that, "[e]ven if the defendant[] ha[s] committed certain technical infractions under the FMLA, [the] plaintiff may not recover in the absence of damages." Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1284 (11th Cir. 1999); see also Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006) (the plaintiff offered no evidence of damages resulting from the defendant's alleged technical violations of the FMLA and, therefore, no interference with FMLA rights occurred).

The plaintiff in this case has not identified any damage caused by the alleged denial of his request for an accounting of his remaining FMLA leave time.[6]   Rather, the plaintiff argues obliquely that he "needed and

---

[6]A plaintiff alleging interference can recover actual damages equal to the amount of any wages or employment benefits denied or lost by reason of the employer's FMLA violation, or any actual monetary loss sustained as a result of the violation, such as the cost of providing care for an injured family member. See 29 U.S.C. 2617(a)(1)(A)(i)(ii). The FMLA does not, however, permit recovery for mental distress. Graham v. State Farm Mut. Ins. Co., supra, 193 F.3d at 1284.

requested an accounting of his FMLA leave in order to make effective use of same and in order to exercise his rights under the Act" (Doc. 24, p. 3). This vague and conclusory assertion is patently insufficient as it does not allege any concrete harm. See Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (conclusory allegations or evidence setting forth legal conclusions are insufficient). Furthermore, the suggestion that the denial of an accounting interfered with the plaintiff's ability to take leave is contradicted by the plaintiff's deposition testimony that during the entire 18-month period the plaintiff was authorized to take FMLA leave he was never without FMLA time when he needed it (see Doc. 18-1, p. 11).

Therefore, viewing the evidence in the light most favorable to the plaintiff, this contention, at most, states a technical violation of the FMLA that is not actionable. See Graham v. State Farm Mut. Ins. Co., supra, 193 F.3d at 1275 ("a plaintiff suffers no FMLA injury when she receives all the leave she requests"); Bender v. City of Clearwater, 2006 WL 1046944 at *12 (M.D. Fla.) (the plaintiff has not shown that the City's alleged actions stopped her from taking FMLA leave or prevented her from returning to work at the end of her approved leave). Consequently, the defendant is entitled to

summary judgment on the plaintiff's claim that the defendant interfered with his rights under the FMLA by denying the plaintiff's request for an accounting of his remaining FMLA leave time.

The plaintiff also alleges that the defendant "effectively interfered with and denied Plaintiff Family and Medical Leave Act rights" by terminating the plaintiff's employment (Doc. 2, ¶23). The defendant contends that it is entitled to judgment as a matter of law on this claim because it discharged the plaintiff based upon its reasonable belief that the plaintiff violated its sales policy, which resulted in the plaintiff receiving unearned commissions (Doc. 18, p. 15).

As indicated, an FMLA interference claim requires the plaintiff to show that he was denied a benefit to which he was entitled under the FMLA. Spakes v. Broward County Sheriff's Office, supra, 631 F.3d at 1309. In this regard, "[t]he employee need not allege that his employer intended to deny the benefit – the employer's motives are irrelevant." Lee v. United States Steel Corp., 450 Fed.Appx. at 837.

On the other hand, the employer is entitled to assert its alleged lawful reasons for termination as an affirmative defense to liability for

interference with FMLA rights. <u>Spakes</u> v. <u>Broward County Sheriff's Office</u>, <u>supra</u>, 631 F.3d at 1310. Thus, "an employee who requests FMLA leave has no greater protection against h[is] employment being terminated for reasons unrelated to an FMLA request than []he did before submitting the request." <u>Krutzig</u> v. <u>Pulte Home Corp.</u>, 602 F.3d 1231, 1236 (11th Cir. 2010); <u>see also</u> <u>Strickland</u> v. <u>Water Works & Sewer Bd. of City of Birmingham</u>, <u>supra</u>, 239 F.3d at 1208 (if the employer shows that it terminated the employee "for a reason wholly unrelated to the FMLA leave, the employer is not liable").

Therefore, the viability of this claim comes down to whether the defendant established that it terminated the plaintiff's employment for a reason unrelated to the plaintiff's exercise of his FMLA rights. <u>See</u> <u>Krutzig</u> v. <u>Pulte Home Corp.</u>, <u>supra</u>. As discussed in connection with the plaintiff's retaliatory termination claim, <u>infra</u>, pp. 31-38, the defendant has established that there is no genuine dispute of material fact that it terminated the plaintiff's employment for a legitimate reason unrelated to FMLA leave: specifically, the defendant's belief that the plaintiff violated the company's policy against entering sales in stages. Therefore, summary judgment in the defendant's favor is appropriately granted on the plaintiff's claim that the

termination of his employment interfered with his FMLA rights. See Krutzig v. Pulte Home Corp., supra; Strickland v. Water Works & Sewer Bd. of City of Birmingham, supra.

### B. FMLA Retaliation

The plaintiff's second claim is that the defendant discharged him in retaliation for exercising his rights under the FMLA. In order to establish a claim of FMLA retaliation, the plaintiff must demonstrate that the defendant intentionally discriminated against him for exercising a right guaranteed under the Act. Martin v. Brevard County Public Schools, 543 F.3d 1261, 1267 (11th Cir. 2008). Thus, "[u]nlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Id. at 1267-68.

FMLA retaliation claims are analyzed under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Martin v. Brevard County Public Schools, supra, 543 F.3d at 1268. A prima facie case of retaliation under the FMLA requires a showing that (1) the employee engaged in statutorily protected conduct, (2) the employee

suffered an adverse employment action, and (3) there is a causal connection between the two. Smith v. BellSouth Telecommunications, Inc., supra, 273 F.3d at 1314.

The causal connection element is satisfied if a plaintiff shows that the protected activity and adverse action were "not wholly unrelated." Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000). Generally, a plaintiff can show the two events are not wholly unrelated if there is close temporal proximity between the protected conduct and the termination, and the decision maker was aware of the protected conduct at the time of the adverse employment action. Clover v. Total Systems Services, Inc., 176 F.3d 1346, 1354 (11th Cir. 1999); Hurlbert v. St. Mary's Health Care Sys., Inc., supra, 439 F.3d at 1298.

If the employee successfully demonstrates a prima facie case, the burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse action. Schaaf v. SmithKline Beecham Corp., 602 F.3d 1236, 1244 & n.3 (11th Cir. 2010). If that is done, the plaintiff must then present evidence sufficient to permit a reasonable factfinder to conclude that the reason given by the employer was not the real reason for the adverse

employment decision, and that it was a pretext for retaliation. Id.; Lee v. United States Steel Corp., supra, 450 Fed.Appx. at 838.

The premise of the plaintiff's retaliation claim is that he "was fired for insisting on an accounting" of his remaining FMLA leave (Doc. 19, ¶4; see also id., ¶5). The plaintiff contends that he has stated a prima facie case because a request for an accounting is statutorily protected activity, his termination is an adverse employment action, and there is a causal connection between the two because his "termination came almost immediately after [his] repeated requests for an accounting" (id., ¶4).

However, the plaintiff's alleged prima facie case of retaliation is fatally flawed. First, as discussed supra, pp. 17-18, the plaintiff has not shown that his request for an accounting of his remaining FMLA leave is statutorily protected conduct. Furthermore, even assuming that it was protected activity, the plaintiff has not shown a causal connection because there is no evidence that the decision maker knew of the plaintiff's requests for an accounting of his FMLA leave time. See Clover v. Total Systems Services, Inc., supra, 176 F.3d at 1354.

The requirement that the decision maker must be aware of the protected conduct at the time of the adverse employment action rests upon common sense. Brungart v. BellSouth Telecommunications, Inc., supra, 231 F.3d at 799. Thus, "[a] decision maker cannot have been motivated to retaliate by something unknown to him." Id.; see, e.g., Clover v. Total Systems Services, Inc., supra, 176 F.3d at 1356 (notwithstanding close temporal proximity between the protected conduct and the termination, summary judgment was warranted on a retaliatory discharge claim because the plaintiff "failed to present sufficient evidence ... that [the decision maker] was aware of her protected conduct.").

In this case, the plaintiff conceded that he did not even know who decided to terminate his employment (Doc. 18-1, p. 17), and he certainly did not present any evidence that Meringolo, the decision maker (Doc. 18-3, ¶13), knew of his requests for an accounting of his FMLA leave when she decided to terminate his employment. Thus, the plaintiff does not allege that he requested from Meringolo an accounting of his remaining FMLA time, or present other evidence that Meringolo knew of that request.

Rather, he merely avers that the "[d]efendant ... refused to provide me with an accounting of remaining FMLA time," and that he was "shuffled from one supervisor to the next" (Doc. 19, ¶4). Meringolo is not a supervisor (Doc. 18-3, ¶¶1, 3), and knowledge of protected activity by employees of the defendant other than a decision maker cannot be imputed to the decision maker for purposes of an FMLA retaliation claim. Krutzig v. Pulte Home Corp., supra, 602 F.3d at 1235; see also Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1197 (11th Cir. 1997) ("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression...."). Therefore, the plaintiff's assertion that he asked someone, or some people, in the defendant company for an accounting of his remaining leave time is insufficient to create a genuine dispute of material fact as to Meringolo's knowledge of the plaintiff's request for an accounting.

In sum, the plaintiff's claim of retaliatory termination based on his requests for an accounting of his remaining FMLA leave time fails as a matter of law because the plaintiff did not (1) show that his request for an accounting of his remaining FMLA leave time is statutorily protected conduct

or (2) present sufficient evidence of a causal connection between the alleged statutory protected activity and his discharge.

Additionally, the plaintiff's opposition memorandum contains a conclusory and vague assertion that the defendant terminated his employment because the "Defendant grew weary of Plaintiff's need for and actual use of FMLA leave" (Doc. 24, p. 3). The plaintiff, however, presents absolutely no factual basis for this contention, and his speculation that the defendant terminated his employment because it suddenly grew weary of him taking intermittent FMLA leave (after the plaintiff had done so over a 18-month period without incident) does not create a genuine dispute of material fact for trial. See Graham v. State Farm Mut. Ins. Co., supra, 193 F.3d at 1284 (A "plaintiff's subjective feelings about [an employer's] actions ... are not determinative."); Walker v. Nationsbank of Florida, N.A., 53 F.3d 1548, 1558 (11th Cir. 1995) (a plaintiff opposing summary judgment cannot rely on mere suspicion); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (the plaintiff must come forward with "specific facts

showing that there is a genuine issue for trial").[7] Notably, the contention that the defendant grew weary of the plaintiff's use of FMLA leave is undermined by the undisputed evidence that the plaintiff's FMLA leave absences were only "minor disruptions" that had less operational effect than an employee taking vacation, since the plaintiff was generally gone for only a few hours at a time (Doc. 18-4, ¶7).

Moreover, assuming that the plaintiff stated a prima facie case of retaliation, the plaintiff's claim fails as a matter of law because the defendant has proffered a legitimate, non-retaliatory reason for the plaintiff's termination, which the plaintiff has failed to show is unworthy of credence. Thus, it is the plaintiff's burden to present evidence from which a factfinder could conclude that the defendant's explanation for terminating his employment was a pretext for retaliation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-16 (1993). "Conclusory allegations or unsupported assertions

---

[7] The plaintiff also alleged in his complaint that, during the course of the plaintiff's use of FMLA leave, the defendant harassed and retaliated against the plaintiff by refusing to allow the plaintiff to apply for intra-company transfers and withholding commissions (Doc. 2, ¶11). The plaintiff failed to develop any facts in support of either of these contentions; in fact, these allegations are not even mentioned in the plaintiff's opposition memorandum or supporting affidavit. Accordingly, any such argument is properly forfeited. See Rule 56(c), F.R.Civ.P.; Scheduling Order (Doc. 11).

of [retaliation], without more, are not sufficient to raise an inference of

pretext ... where an employer has offered extensive evidence of legitimate,

non[-retaliatory] reasons for its actions." Mayfield v. Patterson Pump Co.,

101 F.3d 1371, 1377 (11th Cir. 1996). Moreover, "federal courts do not sit as

a super-personnel department that reexamines an entity's business

decisions...." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir.

2000)(en banc). Therefore (id.):

> A plaintiff is not allowed to ... substitute his
> business judgment for that of the employer.
> Provided that the proffered reason is one that might
> motivate a reasonable employer, an employee must
> meet that reason head on and rebut it, and the
> employee cannot succeed by simply quarreling
> with the wisdom of that reason.

The defendant asserts that it terminated the plaintiff's

employment because it believed that the plaintiff violated company policy by

improperly entering sales in stages on 29 occasions, which resulted in the

plaintiff receiving two separate commissions, rather than a single

commission, for those sales (Doc. 18-3, ¶¶10-13). Meringolo, the decision

maker, explained that the defendant has "zero tolerance" for employees who

manipulate accounts to gain unearned commissions, steal, or engage in other unethical behavior (id., ¶13).

The plaintiff does not dispute that he entered the sales in stages (see Doc. 18-1, p. 15).   Rather, the plaintiff seems to argue that his termination was pretextual because he was allegedly never told that entering sales in stages was prohibited.  Thus, the plaintiff stated at his deposition that it "was never prohibited, either verbally or in writing.... It was never expressed as something one should not do" (id.).  The plaintiff added in his affidavit that "I did not violate any published policy of Defendant," and that the sales guidelines which included a prohibition against entering sales in stages "were not published to me" (Doc. 19, ¶6).  The defendant disputes that the plaintiff was not told about the prohibition against entering sales in stages (Doc. 18-4, ¶4).

Viewing the evidence in the light most favorable to the plaintiff, it is assumed for the purpose of this motion that the plaintiff did not know that the defendant prohibited entering sales in stages.   That assertion, however, does not create in this case a genuine dispute of material fact as to whether the defendant's proffered reason for terminating the plaintiff's

employment is unworthy of credence, and the real reason was retaliation for pursuing benefits under the FMLA.

Thus, "[i]t is a well-settled principle of employment law that in investigating employee misconduct ... our inquiry is limited to whether the employer reasonably believed in good faith that the employee had engaged in misconduct, not whether the employee actually did so." Leach v. State Farm Mut. Auto. Ins. Co., 431 Fed.Appx. 771, 777 (11ᵗʰ Cir. 2011); see Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11ᵗʰ Cir. 1991) ("our inquiry is limited to whether the employer gave an honest explanation of its behavior."). Therefore, "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." E.E.O.C. v. Total System Services, Inc., 221 F.3d 1171, 1176 (11ᵗʰ Cir. 2000); see also Elrod v. Sears, Roebuck & Co., supra.

Accordingly, the issue in this case is not whether the plaintiff engaged in the misconduct, but rather whether the defendant in good faith believed that he did. The plaintiff has not proffered any probative evidence from which a factfinder could reasonably infer that the defendant, even if it

wrongly concluded that the plaintiff knowingly violated company policy, did not honestly believe that the plaintiff engaged in the misconduct for which he was terminated.

Thus, the undisputed evidence is that Meringolo terminated the plaintiff's employment based on the results of supervisor Michelson's investigation, which revealed that the plaintiff had violated company policy by entering sales in stages on 29 occasions (Doc. 18-3, ¶¶11, 13; see, e.g., id., pp. 17-27). Meringolo, furthermore, was informed that the plaintiff admitted to Michelson and Dillon "that he had entered the orders incorrectly" (Doc. 18-3, ¶11; see also id., p. 15).[8]

In addition, Meringolo could reasonably conclude that the plaintiff knowingly violated sales policy, as Meringolo understood that Michelson discussed the sales guidelines and policies with the sales representatives in May 2012 (id., ¶¶4, 5). Importantly, there is no record evidence indicating that Meringolo should have questioned Michelson's investigative findings or truthfulness.

---

[8]Meringolo, as indicated supra, stated that she considered the plaintiff's excuse for improperly entering the sales in stages, but did not find it was "credible or justified" because, among other reasons, it happened 29 times (Doc. 18-3, ¶12).

In sum, the plaintiff asserts no factual basis for challenging Meringolo's averments that she believed in good faith that the plaintiff knowingly violated the defendant's policy by entering sales in stages on 29 occasions. Therefore, the plaintiff's averments that he was unaware of that policy shows, at most, that Meringolo was mistaken, which fails to create a genuine dispute of material fact as to whether the defendant's reason for terminating the plaintiff was a pretext for retaliation. See Elrod v. Sears, Roebuck & Co., supra, 939 F.2d at 1470 (quoting Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987) ("If the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not [retaliatory]....")). Accordingly, the plaintiff's argument that he did not knowingly violate the defendant's policy does not show that the defendant's proffered reason for his termination was a pretext.

Finally, the plaintiff quibbles with the defendant's business judgment by essentially arguing that the termination of his employment was too harsh a punishment. However, as indicated, "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions."

Chapman v. AI Transport, supra, 229 F.3d at 1030. Therefore, the plaintiff's disagreement with the discipline imposed does not, in itself, create a material dispute of fact as to pretext.   See Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984) (employment discrimination laws "do[] not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules").

In this regard, the plaintiff argues that his belief he was a satisfactory employee "cannot mutually coexist" with the defendant's proffered reason for terminating his employment (Doc. 24, p. 5; see Doc. 19, ¶5). However, the plaintiff was not terminated for poor performance, but for violating company policy (Doc. 18-3, ¶¶11-13). Therefore, the plaintiff's conclusory and self-serving assertion that he was a satisfactory employee (which is disputed by the defendant (Doc. 18-4, ¶6)) is immaterial to the issue of pretext in this case.

The plaintiff also argues that his termination was pretextual because he was not afforded the protection of the defendant's progressive disciplinary policy (Doc. 19, ¶5). This contention is meritless because the

-36-

defendant presented evidence that a progressive discipline policy did not apply to the defendant's misconduct. Thus, while acknowledging that the defendant is often lenient with other infractions, Meringolo states that the defendant has "zero tolerance" for employees manipulating accounts to gain unearned commissions, as well as theft, or other unethical behavior (Doc. 18-3, ¶13).

Although the plaintiff may believe that his discipline was too harsh, the defendant's explanation clearly meets the test of being one that might motivate a reasonable employer to terminate employment. See Chapman v. AI Transport, supra, 229 F.3d at 1030. Thus, by entering the orders in stages, the plaintiff received commissions that he was not entitled to, and the defendant could therefore reasonably view the plaintiff's actions as stealing.

Moreover, there is no evidence of disparate application of this policy which could raise an inference of retaliation. To the contrary, Meringolo averred that the plaintiff's "discharge w[as] consistent with the department's prior practices for addressing such instances of violations of critical sales/guidelines and employee dishonesty" (Doc. 18-3, ¶13; see, e.g.,

id., pp. 6-7). The plaintiff, significantly, does not identify any employee who engaged in similar misconduct that was treated more favorably. Thus, although the plaintiff alleges that he observed "the identical thing or similar mid-steps [sic] ... by many representatives for the entire seven-and-a-half years there" (Doc. 18-1, p. 15), he has failed to identify any employee brought to the defendant's attention that was not fired for comparable behavior.

Therefore, the plaintiff has not presented evidence which creates a genuine dispute of material fact as to whether the defendant's proffered reason for terminating the plaintiff's employment was a pretext for retaliation. Further, the plaintiff has not offered any substantial probative evidence that the exercise of his FMLA rights more likely than not motivated his discharge. Accordingly, the defendant is appropriately granted summary judgment on the plaintiff's claim of retaliatory termination under the FMLA. See Dockens v. Dekalb County School System, 441 Fed.Appx. 704, 709 (11th Cir. 2011) (summary judgment properly granted in an FMLA case because "[o]ther than bare assertions, [the plaintiff] produced no evidence that [the employer's reasons are pretextual.").

## V.

For the foregoing reasons, I recommend that the Defendant's Dispositive Motion for Summary Judgment (Doc. 18) be granted, and judgment be entered in favor of the defendant and against the plaintiff on his claims in this case.

Respectfully submitted,

THOMAS G. WILSON
DATED: MARCH 5, 2014    UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).